**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEFAN SACHSENBERG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    PLAINTIFF,<br><br>    VS.<br><br>IRSA INVERSIONES Y REPRESENTACIONES SOCIEDAD ANÓNIMA, EDUARDO SERGIO ELSZTAIN, CRESUD SOCIEDAD ANÓNIMA COMERCIAL, INMOBILIARIA, FINANCIERA Y AGROPECUARIA, SAÚL ZANG, and MATÍAS IVÁN GAIVIRONSKY,<br><br>    DEFENDANTS. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Stefan Sachsenberg ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and her own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding IRSA Inversiones y Representaciones Sociedad Anónima ("IRSA" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired IRSA American Depositary Receipts ("ADRs") between November 3, 2014 and December 30, 2015, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, purchased IRSA ADRs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Non-party IDB Development Corporation Limited ("IDBD") is an Israeli holding company with interests in businesses across various industries such as agriculture, financial services, real estate, communications and technology.

8.      Non-party Alejandro Gustavo Elsztain ("A. Elsztain") is the brother of Defendant Eduardo Sergio Elsztain and has been the Second Vice-Chairman of IRSA since 2001, the Second Vice-Chairman and Chief Executive Officer ("CEO") of CRESUD since 1994, and is a director of IDBD.

9.      Defendant IRSA is a real estate company that engages in a range of diversified real estates-related activities in Argentina. The Company is incorporated in the Republic of

Argentina with principal executive offices located at Bolívar 108 (C1066AAB) Buenos Aires, Argentina. IRSA's ADRs trade on the NASDAQ under the ticker symbol "IRS."

10.     Defendant Cresud Sociedad Anónima Comercial, Inmobiliaria, Financiera y Agropecuaria ("CRESUD") is an agricultural company that produces basic agricultural commodities in Brazil and other Latin American countries and beneficially owns 64% of the outstanding common shares of IRSA. CRESUD's ADRs trade on the NASDAQ under the ticker symbol "CRESY".

11.     Defendant Saúl Zang ("Zang") has been the First Vice-Chairman of IRSA and CRESUD since 1994, and is a director of IDBD.

12.     Defendant Eduardo Sergio Elsztain ("Elsztain") has been the Chairman of the Board of Directors and Chief Executive Officer ("CEO") of IRSA since 1991, and beneficially owns 64.3% of the outstanding common shares of IRSA. Defendant Elsztain is also the Chairman of the Board of Directors of IDBD and CRESUD, and beneficially owns 37.4% of the outstanding common shares of CRESUD.

13.     Defendant Matías Iván Gaivironsky ("Gaivironsky") has served as the Company's Chief Financial Officer ("CFO") and as the CFO of CRESUD since 2011.

14.     The Defendants Elsztain, Gaivironsky, and Zang are sometimes referred to herein as the "Individual Defendants."

15.     Defendant IRSA and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

## IRSA Adopts International Financial Reporting Standards

16.     IRSA presented its 2014 and 2015 annual and quarterly financial statements in accordance with the International Financial Reporting Standards ("IFRS") as issued by the International Accounting Standards Board ("IASB").

17.     According to IFRS 10, Consolidated Financial Statements:

> an investor controls an investee if and only if the investor has all the following: a) power over the investee (see paragraphs 10-14); b) exposure, or rights, to variable returns from its involvement with the investee (see paragraphs 15 and 16); and c) the ability to use its power over the investee to affect the amount of the investor's returns (see paragraphs 17 and 18)

18.     The fact that an investor does not exercise its right to appoint a majority of the investee's board does not, in any way, diminish its control over the investee, as Paragraph BC97 of IFRS 10 states in relevant part:

> an investor that holds more than half the voting rights of an investee has power over the investee when those voting rights give the investor the current ability to direct the relevant activities (either directly or by appointing the members of the governing body). The Board concluded that such an investor's voting rights are sufficient to give it power over the investee **regardless of whether it has exercised its voting power**…

19.     IFRS 24 requires that entities involved in related party transactions disclose the following:

> If an entity has had related party transactions during the periods covered by the financial statements, it shall disclose the nature of the related party relationship as well as information about those transactions and outstanding balances, including commitments, necessary for users to understand the potential effect of the relationship on the financial statements. These disclosure requirements are in addition to those in paragraph 17. At a minimum, disclosures shall include: (a) the amount of the transactions; (b) the amount of outstanding balances, including commitments, and: (i) their terms and conditions, including whether they are

4

secured, and the nature of the consideration to be provided in settlement; and (ii) details of any guarantees given or received; (c) provisions for doubtful debts related to the amount of outstanding balances; and (d) the expense recognised during the period in respect of bad or doubtful debts due from related parties.

The disclosures required by paragraph 18 shall be made separately for each of the following categories: (a) the parent; (b) entities with joint control or significant influence over the entity; (c) subsidiaries; (d) associates; (e) joint ventures in which the entity is a venturer; (f) key management personnel of the entity or its parent; and (g) other related parties.

20.     In discussing relationships between an investor and other parties, IFRS 10, paragraphs B74 and B75 state, in part:

B74: "…A party is a de facto agent when the investor has, or those that direct the activities of the investor have, the ability to direct that party to act on the investor's behalf. In these circumstances, the investor shall consider its de factor agent's decision-making rights and its indirect exposure, or rights, to variable returns through the de factor agent together with its own when assessing control of an investee."

B75: "The following are examples of such other parties that, by the nature of their relationship, might act as de facto agents for the investor:

the investor's related parties.
a party that received its interest in the investee as a contribution or loan from the investor.
a party that has agreed not to sell, transfer or encumber its interests in the investee without the investor's prior approval (except for situations in which the investor and the other party have the right of prior approval and the rights are based on mutually agreed terms by willing independent parties).
a party that cannot finance its operations without subordinated financial support from the investor.
an investee for which the majority of the members of its governing body or for which its key management personnel are the same as those of the investor.
a party that has a close business relationship with the investor, such as the relationship between a professional service provider and one of its significant client"

## Background

21.     On May 7, 2014, a transaction was closed whereby IRSA, acting indirectly through its subsidiary, Dolphin Netherlands B.V. ("Dolphin"), and E.T.H. M.B.M. Extra

5

Holdings Limited ("Extra"), acquired 53.3% of the common shares of IDBD. Dolphin invested $272 million for a 50% interest in IDBD, while Extra acquired the remaining 50%. Under the terms of the agreement, Dolphin and Extra agreed to participate on a joint and several basis in the capital increases resolved by IDBD's Board of Directors in order to carry out its business plan for 2014 and 2015, in amounts of at least NIS 300 million in 2014 and NIS 500 million in 2015. As of June 30, 2014, IRSA's indirect interest in IDBD was approximately 23%.

22.     IRSA has designated Dolphin as a Venture Capital Organization ("VCO") under IFRS 28, which allows IRSA to record its investment in IDBD on its balance sheet as an "investment in associate" and record changes in its value through its income statement. This was structured in this manner in order to avoid the inevitable consolidation of IDBD's financial statements with IRSA's financial statements.

23.     On December 31, 2014, IRSA owned 31% of the common shares of IDBD through Dolphin, and pursuant to an agreement between Dolphin, IRSA, and Extra, dated November 17, 2013 (the "Shareholders Agreement"), IRSA's 31% ownership interest through Dolphin of IDBD gave it the right to appoint three of the nine members of IDBD's Board of directors. Subsequently, Dolphin appointed Defendants Elsztain and Zang, and A. Elsztain to the Board of Directors of IDBD.

24.     On February 10, 2015, Dolphin acquired approximately 61% of the common shares of IDBD pursuant to a rights offering approved by the Board of Directors of IDBD. Extra did not purchase shares in this right offering. Upon this transaction, IDBD effectively became a subsidiary of IRSA, which would have required IRSA to consolidate IDBD's financial statements with its own.

25.    After the completion of February 10, 2015 rights offering, on February 10, 2015, Dolphin sold approximately 12% of the common shares of IDBD to Inversiones Financieras Del Sur S.A. ("IFISA") for cash and a note receivable secured by the IDBD shares. IFISA is a wholly-owned subsidiary of IFIS Limited ("IFIS"). Defendant Elsztain is Chairman of the Board of IFIS, and beneficially owns 37.94% of IFIS stock. Defendant Elsztain also controls more than 50% of IFIS' voting shares through companies controlled by him and proxies. According to Israeli court filings filed by Defendant Zang, the purpose of this transaction was so Dolphin would not hold more controlling shares than required in order to secure its control over IDBD.

26.    On May 28, 2015, pursuant to the Shareholders Agreement, Extra gave notice to Dolphin that Extra was exercising its rights under the "*buy me buy you*" provision requiring Dolphin to either sell all of its IDBD shares to Extra at a specified price or purchase all of Extra's shares at that specified price. Dolphin elected to purchase all of Extra's IDBD shares, and on October 11, 2015, Dolphin, through IFISA, purchased all of Extra's IDBD shares bringing IFISA's holdings in IDBD to over 32%. Dolphin also assumed all the obligations that Extra had, including the obligation to make certain share repurchases during 2015 and 2016.

27.    As a result of these transactions, Dolphin currently owns 49% of IDBD and IFISA currently owns 32% of IDBD, therefore Dolphin and IFISA collectively currently own 81% of IDBD shares.

28.    Today, IDBD carries $6.7 billion of net debt, is going through a restructuring process, and accompanies its latest financial statements with a "going concern" opinion from its auditor, stating that "[t]hese conditions raise substantial doubt about the Company's ability to

continue as a going concern." Further, IRSA is contractually obligated to give IDBD $185 million in capital through 2016, which would further increase its ownership interest in IDBD.

29.      IRSA hides IDBD's $6.7 billion net debt under the umbrella of Dolphin, its VCO, by recording its investment in IDBD on its balance sheet as an "investment in associate" and recording changes in its value through its income statement, even though IRSA, through entities related to Defendant Elsztain, owns 81% of its subsidiary IDBD.

## Materially False and Misleading Statements

30.      On October 31, 2014, the Company filed a Form 20-F for the fiscal year ended June 30, 2014 (the "2014 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting was effective as of June 30, 2014. The 2014 20-F was signed by Defendant Gaivironsky. The 2014 20-F also contained signed SOX certifications required pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Elsztain and Gaivironsky attesting to the accuracy of financial reporting.

31.      The 2014 20-F stated that IRSA's Global Notes Indenture contains an "Incurrence of Additional Indebtedness" covenant that expressly prohibits its EBITDA to Interest ratio to be less than 1.75x. The 2014 20-F stated in part that:

> IRSA NCN due 2017 and IRSA NCN due 2020 both contain certain customary covenants and restrictions, including amount others, limitations for the incurrence of additional indebtedness, restricted payments, disposal of assets, and entering into certain transactions with related companies.

> Under the NCN indentures, IRSA is permitted to incur additional indebtedness provided its coverage of consolidated interest ratio is higher than 1.75. The coverage of consolidated interest ratio is defined as consolidated EBITDA divided by consolidated interest expense, subject to certain adjustments. EBITDA is defined as operating income plus, depreciation and amortization and certain other consolidated non-cash charges. The Group was in compliance with these covenants as of June 30, 2014 and 2013.

32.     The 2014 20-F stated that Dolphin qualifies as a VCO under IFRS 28, stating in part:

> As DFL is a subsidiary that qualifies as a VCO under the exemption contained in IAS 28 mentioned in Note 2.3 (d), we have valued our interest in IDBD at fair value with changes in the income statement.

*     *     *

> *Venture Capital Organization*
>
> We generally account for our investments in associates under the equity method. However, IAS 28 "Investments in Associates" provides an exemption from applying the equity method where investments in associates are held through "Venture Capital Organizations" (VCO) or venture capital entities, as defined in Spanish, even when we are not a VCO. This type of investment may be accounted for at fair value with changes in net income for the years because such measure proves to be more useful to users of financial statements than the equity method.

33.     On February 11, 2015, the Company filed a Form 6-K with the SEC announcing that Dolphin acquired the common shares of IDBD pursuant to a rights offering approved by the Board of Directors of IDBD, which amounted to approximately 61% of IDBD, and after Dolphin sold 12% of its shares in IDBD to IFISA, and thereafter IRSA held an indirect stake of 49% in IDBD:

> By letter dated February 11, 2015, and continuing with the communication released on February 2, 2015, the Company informs that, effectively made an investment in Dolphin Netherlands B.V for the amount of USD 105 million. Additionally the Company, as a result of its indirect participation through Dolphin Netherlands B.V in the rights offering made by IDBD and the sale to Inversiones Financieras del Sur S.A ("IFISA")., increased its indirect stake to 49% of IDBD outstanding shares. Related to the previous paragraph it is important to mention that Dolphin Netherlands B.V has sold 12% of its stake in IDBD to IFISA, related party transaction approved by the Audit Committee of the Company.

34.     On June 17, 2015, the Company filed a Form 6-K with the SEC announcing its third quarter results for the period ended March 31, 2015 ("2015 3Q"), disclosing that through a

related party transaction with IFISA, IRSA had trade and other receivables from IFISA totaling ARS 191.8 million. The 2015 3Q, signed by Defendant Zang, stated in part:

| Related party | Description of transaction | Investments in financial assets non-current | Investments in financial assets current | Trade and other receivables non-current | Trade and other receivables current |
|---|---|---|---|---|---|
| Subsidiaries of the parent company | | | | | |
| Futuros y Opciones.com S.A. | Reimbursement of expenses | - | - | - | 84 |
| FyO Trading S.A. | Reimbursement of expenses | - | - | - | 1 |
| Total Subsidiaries of the parent company | | - | - | - | 85 |
| Other related parties | | | | | |
| Consultores Asset Management S.A. | Reimbursement of expenses | - | - | - | 3,231 |
| Estudio Zang, Bergel y Viñes | Advances | - | | - | 34 |
| | Legal services | - | - | - | 14 |
| Dolphin Fund Ltd. | Reimbursement of expenses | - | - | - | - |
| Austral Gold | Reimbursement of expenses | - | - | - | 2 |
| EMP | Management fees | - | - | - | - |
| Consultores Venture Capital Uruguay | Reimbursement of expenses | - | - | - | 787 |
| | Reimbursement of expenses | - | - | - | 312 |
| Ogden Argentina S.A. | Borrowings | - | - | - | 5 |
| Fundación IRSA | Reimbursement of expenses | - | - | - | 95 |
| Inversiones Financieras del Sur | Borrowings | - | - | - | 191,770 |

35.     On November 3, 2015, the Company filed a Form 12B-25 notifying the SEC that it is unable to file its Annual Report on Form 20-F for the year ended on June 30, 2015 by the required date, stating in part:

> IRSA Inversiones y Representaciones Sociedad Anonima ("IRSA" or the "Company") has determined that it is unable to file its Annual Report on Form 20-F for the year ended on June 30, 2015 (the "Form 20-F") by the prescribed due date without unreasonable effort or expense for the following reasons:

(i)        On October 9, 2015, IRSA filed before the SEC a request of relief from the requirement to present full financial statements audited under U.S. GAAS of an associate accounted for using the fair value option on Form 20-F, pursuant to Rule 3-09 of Regulation S-X, **based on the fact that the Company was unable to force its associate, IDBD Holdings Corporation Ltd. ("IDBD") to provide audited financial statements following such standards.** In lieu of the required information IRSA offered to present full financial statements audited under Israel GAAS, which are already available. **On October 29, 2015, IRSA received a response from the staff of the SEC denying IRSA's request.** Consequently, IRSA will need additional time to request and obtain the US GAAS audit report for IDBD.

[Emphasis added].

36.      On November 17, 2015, the Company filed a Form 20-F for the fiscal year ended June 30, 2015 (the "2015 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting was effective as of June 30, 2015. The 2015 20-F was signed by Defendant Gaivironsky. The 2015 20-F also contained signed SOX certifications by Defendants Elsztain and Gaivironsky attesting to the accuracy of financial reporting.

37.      The 2015 20-F stated that IRSA does not control IDBD or its management, stating in part:

> We have been unable to obtain financial statements for IDBD for the year ended December 31, 2014 audited in accordance with auditing standards generally accepted in the United States ("U.S. GAAS") that may be required to be included in this Annual Report on Form 20-F by Rule 3-09 of Regulation S-X ("Rule 3-09"). As of June 30, 2015, we held 49% of IDBD and, as such, **we did not control IDBD and did not have the power to direct IDBD or its management** to provide us with such audited consolidated financial statements.

[Emphasis added].

38.      The 2015 20-F stated that IRSA's Global Notes program contains an "Incurrence of Additional Indebtedness" covenant that expressly prohibits its EBITDA to Interest ratio to be less than 1.75x. The 2015 20-F stated in part:

IRSA NCN due 2017 and IRSA NCN due 2020 both contain certain customary covenants and restrictions, including among others, limitations for the incurrence of additional indebtedness, restricted payments, disposal of assets, and entering into certain transactions with related companies.

**Under the NCN indentures, IRSA is permitted to incur additional indebtedness provided its coverage of consolidated interest ratio is higher than 1.75.** The coverage of consolidated interest ratio is defined as consolidated EBITDA divided by consolidated interest expense, subject to certain adjustments. EBITDA is defined as operating income plus, depreciation and amortization and certain other consolidated non-cash charges.

[Emphasis added].

39.    The 2015 20-F also stated that Dolphin qualifies as a VCO under IFRS 28, stating in part:

As Dolphin is a subsidiary that qualifies as a VCO in accordance with the IAS 28 exemption referred to in Note 2.3 (d), the Company has recorded its interest in IDBD at fair value with changes in the income statement.

\*        \*        \*

*Venture Capital Organization*

We generally account for our investments in associates under the equity method. However, IAS 28 "Investments in Associates" provides an exemption from applying the equity method where investments in associates are held through "Venture Capital Organizations" (VCO) or venture capital entities, as defined in Spanish, even when we are not a VCO. This type of investment may be accounted for at fair value with changes in net income for the years because such measure proves to be more useful to users of financial statements than the equity method.

40.    The statements referenced in ¶¶ 30 – 39 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Dolphin does not adequately qualify as

a VCO, and therefore IDBD's $6.7 billion net debt should be consolidated with IRSA's financial statements; (2) the impending consolidation of IDBD's debt would violate IRSA's Global Notes Indenture, as IRSA would be in breach of the "Incurrence of Additional Indebtedness" covenant, which prohibits its EBITDA to interest coverage ratio to be less than 1.75x; (3) the terms of the February 10, 2015 related party transaction between Dolphin and IFISA; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

41.    On November 19, 2015, *Spruce Point Capital Management* published an investment research report on the Company ("Spruce Point Report") asserting the following:

- IRSA (NYSE: IRS) is a Latin American real estate company. IRSA recently invested $300m+ in IDB Development Corp. (TLV: IDBD), an Israeli holding company with interests in real estate, communications, agricultural products, insurance and technology. **IDBD is burdened with $6.7 billion of net debt, going through a restructuring process, and has a "going concern" warning from its auditor**. It is dependent on further capital injection commitments from IRSA of approximately $185m through 2016

- Together with IFISA, a related-party and controlled entity of IRSA's Chairman, it appears that IRSA owns 81% of IDBD, a controlling stake that should trigger IDBD being consolidated into the financial results of IRSA. IRSA claims that it only owns 49%. The additional capital injections of $185m will only increase the aforementioned ownership stake above the current level

- IRSA has used a narrow loophole in International Financial Reporting Standards ("IFRS") accounting to avoid consolidation by designating its IDBD investment through Dolphin Fund, a subsidiary designated a Venture Capital Organization ("VCO"). In our opinion, this is a grossly flawed accounting application to avoid consolidation and we've provided documentary evidence that calls into question Dolphin's status as a VCO. **Upon consolidation, we estimate IRSA's pro forma Net Debt / EBITDA leverage to be 8.6x**

- Under IRSA's outstanding Global Notes indenture, **a consolidation of IDBD's debt would result in a covenant breach of its EBITDA to interest coverage ratio of 1.75x** (we estimate pro forma 1.25x). At its October shareholder meeting, IRSA took the necessary steps to issue a further $300m in Global Notes, perhaps as means to fund its IDBD capital injections. A covenant breach would impede this issuance

- In a November NT 20-F filing (a request for an extension to file its annual report), IRSA suggested that the SEC may be currently investigating the consolidation issue by requiring IDBD financial statements audited under US GAAS. The SEC denied its request to Israeli GAAS statements instead. **In its new 20-F filing, IRSA included a big risk factor that its inability to provide such audited financials would "materially adversely affect" its ability its access to capital markets, and may ultimately result in the delisting of its shares.**

- IRSA trades at 3.6x book value, an irrational price given the apparent covenant breach and debt issues upon IDBD consolidation. **If IRSA traded at 1x book value, its stock would be worth $4.75 per ADR (approx. 70% downside)**

- IRSA is 64% owned by Cresud (Nasdaq: CRESY). CRESY's stock trades parallel to IRSA's and could fall to $4.00 per ADR (-70%)

[Emphasis added].

42.    Specifically, the Spruce Point Report asserts that Dolphin does not qualify as a VCO, and therefore IDBD's $6.7 net debt should be consolidated with IRSA's financial statements. The report states in part:

> In our opinion, IRSA's Dolphin Fund VCO entities bear no resemblance to a venture fund by any stretch of the imagination. In short, we believe the designation as a VCO is grossly inappropriate and designed to avoid consolidating IDBD's $6.7 billion of net debt on to IRSA's books
>
> **We Believe IDBD Should Be Consolidated Into IRSA's Financials:** IRSA's accounting choice appears designed for one thing; to avoid consolidation of IDBD into its financials. We can understand why; IDBD is massively levered with $6.7 billion of net debt outstanding as of 6/30/15. Despite IRSA having already injected $300m+ into IDBD since 2014, IDBD still has received a "going concern" warning from its auditor as of 6/30/15. IRSA has commitments to inject a further $185m into IDBD through 2016.

\*        \*        \*

**Our interpretation of Dolphin and its entities suggest that it is not a Venture Capital Organization**

\*        \*        \*

**Dolphin Funds Ltd. Is Really Just An Entity Controlled For IRSA's Benefit**

\*        \*        \*

RSA should be reporting to the SEC the activities of IDBD, a material subsidiary which we believe should be consolidated. To illustrate, IRSA's total assets as of 6/30/15 were approximately $960m (adjusted to exclude reporting IDBD as an associate). IDBD's assets totaled $10.5 billion at 6/30/15 or 11x larger than IRSA's assets!

\*        \*        \*

**We Believe IRSA Should Consolidate IDBD's Mountain of Debt**

[Emphasis added].

43.    Specifically, the Spruce Point Report asserts that IRSA, and entities related to Defendant Elsztain such as, Dolphin, IFIS, and IFISA, own 81% of IDBD's shares and therefore effectively control IDBD. The report states in part:

> **Egregious Accounting For IRSA's Controlling Investment in IDB Holdings:**
> Our close examination of the facts and circumstances suggest that IRSA has majority control of IDBD through related-party entities under common control that have accumulated 81% of IDBD's shares.
>
> \*        \*        \*
>
> **Plenty of Related Party Deals To Consider:** IRSA makes numerous disclosures about related-party transactions. IRSA has the largest list of related-party transactions that Spruce Point has, to date, ever seen! To illustrate, IRSA's 2015 20-F Note 37 to the financial statements include 17 pages (F180 to F197) of related party disclosures! We have found instances of related party transactions not adequately described to IRSA investors.
>
> \*        \*        \*

In our opinion, the net effect is that IRSA now owns 81% through its common control interests in Dolphin and IFISA and has the right to appoint an additional three Board members (for a total of six of nine)

*     *     *

We estimate that Dolphin, IFISA, and entities related to Eduardo Elsztain now own approximately 81% of IDBD (vs. 49% reported in its SEC financial filings), and clearly has control of IDBD

[Emphasis added].

44.     Specifically, the Spruce Point Report also asserts that IDBD itself views IRSA's

ownership in IDBD at 66.73%, stating in part:





As of Nov 17, 2015 when IRSA filed its previously delinquent FY 2015 20-F, IRSA still claims that it owns 49% of IDBD and does not control the company. IDBD viewed IRSA's ownership at 66.73% as of its mid year 2015 filing.

IDB Development Corporation

**IDB | 2015 | Q2**

**Report of the Board of the Directors regarding the State of the Company's Affairs (cont'd)**

Disputes between the controlling shareholders of the Company - As a result of the rights issue that was completed in February 2015, the rate of holdings of the corporations controlled by Mr. Eduardo Elsztain: Dolphin Fund Limited, Dolphin Netherlands and Inversiones Financieras Del Sur S.A. (the "Dolphin Group Companies") increased to approximately 61.5% of the issued capital of the Company (as of the reporting date and after the exercise of warrants (Series 4) by the Dolphin Group Companies, as specified below, the holding rate is approximately 66.73%), whereas the holding rate of Mr. Mordechai Ben-Moshe (through C.A.A) decreased to approximately 16.2% of the issued capital (as of the reporting date, approximately 13.99%). The aforementioned changes in the rates of holding in the Company may lead to changes in the Company's control structure, and in the composition of its Board of Directors. In an exchange of letters between member companies of the Dolphin Group and C.A.A., in the months of February and March 2015, the member companies of the Dolphin Group demanded, following the rights issue and in connection with the shareholders agreement between the parties, inter alia, changes to the composition of the Board of Directors of the Company, in a manner whereby the member companies of the Dolphin Group will be the dominant

Source: IDBD Mid Year 2015 Report

12

45.     Specifically, the Spruce Point Report also asserts that Defendant Zang, in Israeli

court filings, acknowledged the fact that Dolphin indeed controls IDBD, stating in part:



*Israeli Legal Document Evidence of Control*

**In a signed affidavit to the Israeli Court, Saul Zang – First Vice Chairman of IRSA – stated fairly clearly that the transactions with Dolphin and IFISA were a policy matter related to control over IDBD. Mr. Zang is the same individual that signs IRSA's financial statements and filings to the SEC.**

31. IFISA purchased shares from Dolphin only after the completion of the right offering, and after Dolphin exercised the rights it had as part of the rights offering, received the shares to its possession and injected into IDBD all the funds it had undertaken to inject as part of the rights offering. Only after the injection of capital from Dolphin to IDBD was completed, was the transaction made to sell the shares from Dolphin to IFISA. This transaction was executed due to internal considerations of Dolphin, which prefers, as a policy, not to hold more controlling shares than is required to secure its control over IDBD.

I hereby declare that this is my name, this is my signature and all that is stated in this affidavit of mine is true.

Saul Zang

Source: Israeli Court System

16

46.     Specifically, the Spruce Point Report also asserts that consolidation of IDBD's debt would be in violation of IRSA's Global Notes Indenture, because IRSA would be in breach of the "Incurrence of Additional Indebtedness" covenant, which prohibits its EBITDA to interest coverage ratio to be less than 1.75x. The report states in part:

> •Under IRSA's outstanding Global Notes indenture, a consolidation of IDBD's debt would result in a covenant breach of its EBITDA to interest coverage ratio of 1.75x (we estimate pro forma 1.25x). At its October shareholder meeting, IRSA took the necessary steps to issue a further $300m in Global Notes, perhaps as means to fund its IDBD capital injections. A covenant breach would impede this issuance

*       *       *

**Under IRSA's Global Bond Indenture, It Appears To Be In Violation of its Covenants:** IRSA currently carries US$300m of debt issued under its Global Notes program which mature in 2017 and 2020. Its indenture contains an "Incurrence of Additional Indebtedness" covenant that expressly prohibits its

EBITDA to Interest ratio to be less than 1.75x on a pro forma basis. Given IDBD's substantial debt load (consisting primarily of unsecured debentures amounting to $5.4 billion), we estimate IRSA's pro forma coverage ratio to be 1.25x (1.0x excluding one-time property gains). It is our view that IRSA is in imminent risk of a covenant breach

*     *     *

***IRSA Violates its Bond Covenants Upon Consolidation of IDBD***

[Emphasis added].

47.     Specifically, the Spruce Point Report also asserts that IRSA did not disclose in the Form 6-K filed on February 11, 2015 with the SEC that IRSA "had accepted a note from IFISA for approximately 86% of the sale price secured by a pledge of the IDBD shares," as consideration for the February 10, 2015 sale of IDBD shares to IFISA from Dolphin,

48.     Specifically, the Spruce Point Report also asserts that IRSA did not disclose the terms of the February 10, 2015 related party transaction between Dolphin and IFISA as required by IFRS 24 Related Party Disclosures.

49.     Specifically, the Spruce Point Report also asserts that "IDBD became a subsidiary of IRSA as a result of the February 2015 rights offering, which resulted in an increase in Dolphin's ownership interest to 61% of IDBD's outstanding shares", and asserts that "[b]ecause IFISA is a related party of Dolphin and because Dolphin financed IFISA's purchase of the IDBD shares, we believe that, in accordance with paragraphs B74 and B75 of IFRS 10, IFISA is Dolphin's de facto agent and the shares held by IFISA should be attributed to Dolphin, and ultimately IRSA's total ownership of IDBD".

50.     On this news, shares of IRSA fell $1.61 per share or approximately 10% over the next two days to close at $15.06 per share on November 20, 2015.

## Additional False and Misleading Statements

51.     On November 20, 2015, IRSA issued a press release denying the Spruce Point

Report, which states in part:

### IRSA Inversiones y Representaciones S.A. Material Fact

BUENOS AIRES, Nov. 20, 2015 /PRNewswire/ -- IRSA Inversiones y Representaciones S.A. (NYSE: IRS; MERVAL: IRSA), the leading real estate company in Argentina, today issued a statement in response to what it considers to be a misleading, unprincipled report issued on November 19, 2015 by Spruce Point Capital Management (the "Fund") and to unusually high trading volume in its stock shortly after publication of the Spruce Point report.

The Fund is a self-identified short-seller in IRSA's stock.  Its own report reveals that the Fund and its affiliates have a "short position" in IRSA's stock "and therefore stand to realize significant gains" in the event that the price of IRSA's stocks declines.  The Company believes that the short-seller Fund's self-interest is clearly evident, and that its report is riddled with incorrect inferences and inappropriate innuendo.

*Eduardo Elsztain, Chief Executive Officer of IRSA, said, "We stand by the accuracy and integrity of our financial statements, which were audited by internationally-recognized external accountant firms, and our regulatory filings.*  We disagree with the short-seller fund's uninformed implication that we might not have complied with our obligations under our debt instruments.  This, quite simply, is not the case.  IRSA is proud of its decades-long track record of compliance, and transparency in the international capital markets and categorically rejects any self-serving suggestion to the contrary."

IRSA Inversiones y Representaciones S.A. (NYSE: IRS, BASE: IRSA) is Argentina's largest, most well-diversified real estate company, and it is the only company in the industry whose shares are listed on both the Bolsa de Comercio de Buenos Aires and The New York Stock Exchange. Through its subsidiary IRSA Commercial Properties, IRSA manages an expanding top portfolio of shopping centers and office buildings, primarily in Buenos Aires. The company also owns 3 luxury hotels and a unique landbank for future developments across Argentina. Its solid, diversified portfolio of properties has established the Company as the leader in the sector in which it participates. Additionally, IRSA owns a stake in Banco Hipotecario, Argentina's largest mortgage supplier in the country as well as international opportunistic investments in real estate and other assets, including lipstick building in Manhattan, an stake in the US REIT Condor hospitality trust and 49% of IDB Development, one of the largest conglomerate in Israel.

[Emphasis added].

52.     On November 24, 2015, IRSA issued a press release denying the Spruce Point

Report, which states in part:

### IRSA Inversiones y Representaciones S.A. Material Fact

BUENOS AIRES, Argentina, Nov. 24, 2015 /PRNewswire/ -- IRSA Inversiones y
Representaciones S.A. (NYSE: IRS; MERVAL: IRSA), the leading real estate
company in Argentina, today issued a statement to complement the information
sent to the market on November 20, 2015.

The Company affirms the accuracy of (i) its consolidated financial statements as
of and for its fiscal year ended June 30, 2015 which were audited by Price
Waterhouse & Co S.R.L. and (ii) its unaudited consolidated financial statements
as of and for the three-month period ended September 30, 2015. IRSA's audited
annual and unaudited quarterly consolidated financial statements were prepared in
accordance with IFRS.

For the reasons summarized below, and in accordance with IFRS, IRSA did not
consolidate IDBD in such financial statements.

At both June 30 and September 30, 2015, IRSA had an indirect 49% interest in
IDBD. On June 30, 2015 and September 30, 2015, IFISA held an interest of
37.39% and 36.76%, respectively, in Cresud, which on both dates held a 64.3%
interest in IRSA. Additionally, IFISA held an interest of 17.7% in IDBD on both
dates. At both June 30 and September 30, 2015, IRSA, IFISA and Mr. Mordechai
Ben-Moshe ("MBM") were parties to a joint control agreement (the "Joint Control
Agreement") with respect to their respective investments in IDBD. Therefore,
IRSA did not have effective control over IBDB on either of such dates. For this
reason, and in accordance with IFRS, IRSA did not consolidate IDBD in its
annual or most recent unaudited quarterly consolidated financial statements.

On October 11, 2015, IFISA (not IRSA) acquired shares representing an
additional 14% of IDBD, and on such date the Joint Control Agreement was
terminated. Due to the October 11 termination of the Joint Control Agreement,
IRSA is currently assessing whether or not it should begin to consolidate IBDB
commencing on the date as of which the Elsztain group (i.e., IFISA, IRSA and
related companies) obtained effective control over IDBD. No conclusion has been
reached yet.

On October 9, 2015, IRSA filed with the SEC a request for a waiver of the
provisions of Rule 3-09 of Regulation S-X which would require IRSA to include
in its annual report on Form 20-F the separate financial statements of IDBD as of
and for the year ended December 31, 2014 audited in accordance with US GAAS.
IRSA filed this waiver request because IDBD does not have US GAAS financial

statements, and IRSA believes that their preparation would take time and would impose an undue economic burden on IRSA. This issue is unrelated to IRSA's consolidation analysis. IRSA has no reason to believe that the SEC is conducting any kind of investigation with respect to IRSA's financial statements or otherwise.

It should be noted that IDBD's audited consolidated financial statements for the year ended December 31, 2014 and its unaudited consolidated financial statements as of and for the six-month period ended June 30, 2015 were prepared in accordance with IFRS, audited under Israel GAAS by KPMG, and are publicly available on IDBD's website.

**All of IDBD's Debt is Non-Recourse to IRSA.**

Irrespective of whether IRSA consolidates IDBD's indebtedness in its future financial statements, none of such indebtedness is guaranteed by IRSA or secured by any of IRSA's assets. All of IDBD's indebtedness is non-recourse to IRSA.

**IRSA Has Complied with its Debt Covenants.**

IRSA's outstanding indebtedness includes its local bonds, its US$150 million Notes due 2017 and its US$150 million Notes due 2020. IRSA's debt instruments contain certain incurrence (not maintenance) covenants that limit the incurrence of indebtedness. IRSA has carefully reviewed all its debt agreements and believes that it is in compliance with all applicable covenants and, assuming no increase in IRSA's shareholding in IDBD, will remain in compliance even if it consolidates IDBD in its future financial statements.

53.     The statements referenced in ¶¶ 51 – 52 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Dolphin does not adequately qualify as a VCO, and therefore IDBD's $6.7 billion net debt should be consolidated with IRSA's financial statements; (2) the impending consolidation of IDBD's debt would violate IRSA's Global Notes Indenture, as IRSA would be in breach of the "Incurrence of Additional Indebtedness" covenant, which prohibits its EBITDA to interest coverage ratio to be less than 1.75x; (3) the terms of the February 10, 2015 related party transaction between Dolphin and

IFISA; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

54.     On December 30, 2015, the *Bloomberg* reported that IRSA will consolidate its investment in IDBD retroactive October 11, 2015.

55.     On this news, shares of IRSA fell $0.08 per share to close at $12.30 per share on December 31, 2015.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired IRSA securities trade on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, IRSA securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class

may be identified from records maintained by IRSA or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IRSA;

- whether the Individual Defendants caused IRSA to issue false and misleading public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;

- whether the prices of IRSA securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

63. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- IRSA securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold IRSA securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

66. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of IRSA securities; and (iii) cause Plaintiff and other members of the Class to purchase or

25

otherwise acquire IRSA securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for IRSA securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about IRSA's finances and business prospects.

70.     By virtue of their positions at IRSA, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of IRSA, the Individual Defendants had knowledge of the details of IRSA's internal affairs.

72.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of IRSA. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to IRSA's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for IRSA's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning IRSA's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired IRSA securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

73.     During the Class Period, IRSA's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of IRSA securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of IRSA securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of IRSA's securities declined

sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

74.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants and CRESUD

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     During the Class Period, the Individual Defendants and CRESUD participated in the operation and management of IRSA, and conducted and participated, directly and indirectly, in the conduct of IRSA's business affairs. Because of their senior positions and as a parent company, they knew the adverse non-public information regarding IRSA's business practices.

78.     As officers and/or directors and/or as the parent company of a publicly owned company, the Individual Defendants and CRESUD had a duty to disseminate accurate and truthful information with respect to IRSA's financial condition and results of operations, and to correct promptly any public statements issued by IRSA which had become materially false or misleading.

79.     Because of their positions of control and authority as senior officers and as a parent company, the Individual Defendants and CRESUD were able to, and did, control the contents of the various reports, press releases and public filings which IRSA disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants and CRESUD exercised their power and authority to cause IRSA to engage in the wrongful acts complained of herein. The Individual Defendants and CRESUD therefore, were "controlling persons" of IRSA within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of IRSA securities.

80.     Each of the Individual Defendants and CRESUD, therefore, acted as a controlling person of IRSA. By reason of their senior management positions and/or being directors and/or being the parent company of IRSA, each of the Individual Defendants and CRESUD had the power to direct the actions of, and exercised the same to cause, IRSA to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants and CRESUD exercised control over the general operations of IRSA and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

81.     By reason of the above conduct, the Individual Defendants and CRESUD are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by IRSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 9, 2016

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:
Jacob A. Goldberg, (PA ID: 66399)
Gonen Haklay (PA ID: 764446)
101 Greenwood Avenue, Suite 203
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

***Counsel for Plaintiff***

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against the present and former officers and directors of IRSA Inversiones y Representaciones Sociedad Anónima ("IRSA"). The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against IRSA's current and former officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in IRSA securities during the class period set forth in the complaint.  I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 400 | 10/01/2013 | $9.20 | | $ |
| 76 | 11/20/2015 | $15.26 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):


6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _23_ day of _O2_, 2016.


Signature: _____

Name: Stefan Sachsenberg

Address:

Phone:

E-mail:


Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |


PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

2